# DUNCAN *v.* MISSOURI.

ERROR TO THE SUPREME COURT OF THE STATE OF MISSOURI.

No. 1038. Submitted January 12, 1894. — Decided March 5, 1894.

The privileges and immunities of citizens of the United States, protected by the Fourteenth Amendment, are privileges and immunities arising out of the nature and essential character of the Federal government, and granted or secured by the Constitution.

Due process of law, and the equal protection of the laws are secured if the laws operate on all alike, and do not subject the individual to an arbitrary exercise of the powers of government.

An *ex post facto* law is one which imposes a punishment for an act which was not punishable at the time it was committed; or an additional punishment to that then prescribed; or changes the rules of evidence by

which less or different testimony is sufficient to convict than was then required; or, in short, in relation to the offence or its consequences, alters the situation of a party to his disadvantage.

The prescribing of different modes of procedure, and the abolition of courts and creation of new ones, leaving untouched all the substantial protections with which the existing law surrounds the person accused of crime are not considered within the constitutional prohibition.

To give this court jurisdiction over a judgment of the highest court of a State, the title, right, privilege, or immunity relied on must be specially set up or claimed at the proper time and in the proper way, and the decision must be against it; whereas, in this case, the question was not suggested until after judgment, and after an application for rehearing had been overruled, and only then in the form of a motion to transfer the cause.

MOTION to dismiss. Under the constitution of Missouri, in force at the time of the commission of the homicide to which this case relates, the judicial power of that State was vested in a Supreme Court and other inferior courts as therein mentioned, the Supreme Court consisting of five judges, any three of whom constituted a quorum. Constitution of Missouri, 1875, Art. VI.

In 1889 the general assembly of Missouri passed a concurrent resolution submitting to the qualified voters of the State an amendment to the constitution, concerning the judicial department, to be voted upon at the general election to be held on the Tuesday next following the first Monday in November, A.D. 1890, which vote was had accordingly, and the amendment ratified and adopted. This amendment provided among other things as follows:

" SECTION 1. The Supreme Court shall consist of seven judges, and, after the first Monday in January, 1891, shall be divided into two divisions, as follows: One division to consist of four judges of the court and to be known as division number one; the other to consist of the remaining judges and to be known as division number two. The divisions shall sit separately for the hearing and disposition of causes and matters pertaining thereto, and shall have concurrent jurisdiction of all matters and causes in the Supreme Court, except that division number two shall have exclusive cognizance of all criminal cases pending in said court: *Provided*, That a cause therein may be

transferred to the court as provided in section four of this amendment. The division of business of which said divisions have concurrent jurisdiction shall be made as the Supreme Court may determine. A majority of the judges of a division shall constitute a quorum thereof, and all orders, judgments, and decrees of either division, as to causes and matters pending before it, shall have the force and effect of those of the court."

" Sec. 4. When the judges of a division are equally divided in opinion in a cause, or when a judge of a division dissents from the opinion therein, or when a Federal question is involved, the cause, on the application of the losing party, shall be transferred to the court for its decision ; or when a division in which a cause is pending shall so order, the cause shall be transferred to the court for its decision." Laws Missouri, 1889, 322.

All provisions of the constitution of the State and all laws thereof, not consistent with the amendment, were declared rescinded upon its adoption.

In accordance with the amendment, the Supreme Court became thereafter composed of seven members, (two being added as provided,) divided into divisions one and two.

Harry Duncan was indicted at the January term, 1891, of the St. Louis Criminal Court, for the murder of one James Brady, October 6, 1890, and, after he had been arraigned and pleaded not guilty, the cause was removed, on his application, to the Circuit Court of St. Louis County, wherein it was tried at September term, 1892, and resulted in his conviction and sentence to death. From this judgment he prosecuted an appeal to the Supreme Court, where the cause was heard by Division No. 2. The errors assigned on Duncan's behalf embraced the various points which had been saved upon the trial, but no Federal question was raised either in the appellate or the trial court. The Supreme Court, Division No. 2, on May 16, 1893, delivered an opinion discussing the errors relied on, (reported in advance of the official series, 22 S. W. Rep. 699,) and affirmed the judgment. On May 26, Duncan applied for a rehearing, which was denied May 30. No

reference to any Federal question was made in the opinion or in the application for a rehearing.

Thereupon, June 7, a motion was filed on behalf of Duncan for the transfer· of the cause to the Supreme Court in· banc, upon the grounds that the cause was determined solely by a minority of the Supreme Court; that a Federal question was involved in that the amendment to the constitution of Missouri was in conflict with the Constitution of the United States; that the offence with which Duncan stood charged was committed October 6, 1890, and before the adoption of the amendment, and that said amendment and the proceedings thereunder were in violation of section 10, article 1, of the Constitution of the United States inhibiting the passage of *ex post facto* laws; and in contravention of the Fourteenth Amendment in that thereby the privileges and immunities of appellant were abridged; he was denied the equal protection of the laws; and would be deprived of life without due process of law; and that such amendment and proceedings were in conflict with fundamental principles. The motion was denied, and, subsequently, this writ of error was allowed by the Chief Justice, and now comes before the court on a motion to dismiss.

*Mr. R. F. Walker*, Attorney General of the State of Missouri, for the motion.

*Mr. E. M. Hewlett* and *Mr. Walter M. Farmer* opposing.

Mr. Chief Justice Fuller, after stating the case, delivered the opinion of the court.

.The amendment to the constitution of the State of Missouri provided for the separation of the Supreme Court into two divisions for the transaction of business, and that when a Federal question was involved, the cause, on the application of the losing party, should be transferred to the full court for decision. Doubtless, the particular division would direct, of its own motion, the transfer of cases involving a Federal ques-

tion without a hearing in the first instance, as was also allowed by the amendment, but to justify transfer, whether before or after judgment, the question must be involved in the sense of arising for decision.

But it is conceded that the record in this cause as it came into the Supreme Court, Division No. 2, disclosed no Federal question to be determined, thereby inviting the division to transfer the cause, or, after the disposal of which, the losing party would be entitled to such transfer. On the contrary, the contention is in effect that division number two had no jurisdiction whatever, because the amendment, if operative on Duncan, was unconstitutional; and this involved the conclusion that there was no appellate court to which the case could be taken, as the prior provision in that regard had been repealed. Yet the objection was not raised before or at the hearing on the merits, nor on the application for rehearing, but was first taken, after judgment affirmed and application denied, on a motion to transfer the cause and as a reason for the transfer, although that motion, in respect of the question sought to be raised, could derive no force from the amendment whose validity was denied. Indeed, if the motion had been granted, and the judgment of the Circuit Court had thereupon been affirmed by the full bench, it is difficult to see why plaintiff in error might not as well then have questioned the jurisdiction of the Supreme Court, as constituted with seven judges under the amendment, as he now does the power of division number two with three judges.

A writ of error from this court to review a final judgment in any suit in the highest court of a State in which a decision in the suit could be had can only be maintained under the circumstances defined in section 709 of the Revised Statutes.

The judgment brought up by the writ in this case is the judgment of the Supreme Court of Missouri, entered by Division No. 2, and it is obvious that the validity of the constitutional amendment was not drawn in question in the cause on the ground of repugnancy to the Constitution of the United States, and its validity sustained by that decision. But the question of validity arises, if at all, in connection with the

claim that a right, title, privilege, or immunity under the Constitution of the United States was specially set up by plaintiff in error, and denied.

The argument seems to be that the constitution secured to plaintiff in error the right to have his case adjudicated on appeal by a Supreme Court of five judges, as provided by the state constitution at the time of the commission of the offence with which he stood charged, although his motion accepted the jurisdiction of a bench of seven, and he objects that that right was denied to him in the adjudication of his case by a court composed of three judges in accordance with the amendment. And he insists that the amendment is as to him obnoxious to the objections that it denies due process and the equal protection of the laws, and abridges his privileges and immunities in contravention of the Fourteenth Amendment. But the privileges and immunities of citizens of the United States, protected by the Fourteenth Amendment, are privileges and immunities arising out of the nature and essential character of the Federal government, and granted or secured by the Constitution; and due process of law and the equal protection of the laws are secured if the laws operate on all alike, and do not subject the individual to an arbitrary exercise of the powers of government; and there is no suggestion of deprivation in these regards, except as covered by the point really pressed, that the amendment to the state constitution was, as to Duncan, *ex post facto*, and therefore void.

It may be said, generally speaking, that an *ex post facto* law is one which imposes a punishment for an act which was not punishable at the time it was committed; or an additional punishment to that then prescribed; or changes the rules of evidence by which less or different testimony is sufficient to convict than was then required; or, in short, in relation to the offence or its consequences, alters the situation of a party to his disadvantage; *Cummings* v. *Missouri*, 4 Wall. 277; *Kring* v. *Missouri*, 107 U. S. 221; but the prescribing of different modes of procedure and the abolition of courts and creation of new ones, leaving untouched all the substantial protections with which the existing law surrounds the person accused of

crime, are not considered within the constitutional inhibition. Cooley Const. Lim. (5th ed.) 329.

Accordingly, in *State* v. *Jackson,* 105 Missouri, 196, the precise questions sought to be raised here were decided by the Supreme Court of Missouri, at April term, 1891, of that court, adversely to the position taken by plaintiff in error, the case having been transferred to the court in banc in order that these questions, which were raised by motion for rehearing in division number two, where the judgment of the lower court had been affirmed, (106 Missouri, 174,) might be considered by a full bench. The case had been before the Supreme Court on two former occasions, (95 Missouri, 623 ; 99 Missouri, 60,) and the constitutional amendment in question was adopted after the appellant took his last appeal. The Supreme Court held that it could not " be doubted that it was entirely competent for the people to adopt such a change in their organic law as to take away from this court as a whole all cognizance of criminal causes, and to confer such jurisdiction on a portion or division of this court, though less in numbers and different in *personnel* from this court as organized when the crime in question was committed ; " and that the amendment was not contrary to the Fourteenth Amendment nor to section ten of article one of the Federal Constitution as applied to one convicted of murder, who had appealed before the amendment took effect.

But we are not called on to place our decision upon concurrence in that view, since we are of opinion that the plaintiff in error did not bring himself within the provisions of section 709 of the Revised Statutes. To give jurisdiction to this court, the title, right, privilege, or immunity relied on must be specially set up or claimed at the proper time and in the proper way, and the decision must be against it ; whereas, in this case, the question was not suggested until after judgment, and after an application for rehearing had been overruled, and only then in the form of a motion to transfer the cause. Whether that motion was held to come too late for the purposes of transfer we are not informed, but its denial was in no aspect equivalent to a decision against a right under the Constitution of the United States specially set up or claimed at the proper

time and in the proper way. *Texas & Pacific Railway* v. *Southern Pacific Co.*, 137 U. S. 48; *Caldwell* v. *Texas*, 137 U. S. 692, 698; *Butler* v. *Gage*, 138 U. S. 52; *Leeper* v. *Texas*, 139 U. S. 462.

The writ of error is

*Dismissed.*